Joe P. Josephson
Attorney for Defendant
912 West 6th Avenue
Anchorage, Alaska 99501
Tel. (907) 276-0151
Facsimile (907) 276-0155

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

_____
UNITED STATES OF AMERICA,   )   No. 3:06-cr-000041-06-RRB
                            )
            Plaintiff,      )
                            )
     V.                     )
                            )
ROBERT H. McDONALD,         )
                            )
            Defendant.      )
_____)

**SENTENCING MEMORANDUM FOR ROBERT McDONALD**

It is respectfully submitted that the sentence to be imposed upon Robert McDonald ("McDonald") should <u>not</u> require his return to Bureau of Prisons custody.

A. **The Utilitarian Perspective**

Viewed from a purely utilitarian perspective, the return of McDonald, who has already served a significant period of incarceration, to the custody of the Bureau of Prisons would not advance the goals of community protection, deterrence, retribution, incapacitation, or rehabilitation[1].

---

[1] The Pre-Sentence Report identifies no third party risk. It also advises that there is no restitution to be made pursuant to the Count for which McDonald stands convicted.

PDF created with pdfFactory Pro trial version www.pdffactory.com

1. *McDonald's Behavior While Released on Bail*.

Since his release on bail in October, 2007, McDonald (as reported at page 2, paragraph 10, of the Pre-Sentence Report) has met all of the conditions of his release, including electronic monitoring and urinalysis, and maintenance of contact with his probation officer.

But McDonald's overall behavior since his release on bail is even *more* to his credit than just his compliance with conditions. Over and above the conditions of release, he has done what this Court advised him to do: he quickly and diligently pursued, got, and has retained gainful employment, including oil field work on the North Slope (for PGS Onshore) and a construction job in Fairbanks (for Jolt Construction). He has used his income sensibly, paying bills and helping his mother and other relatives financially and emotionally. McDonald is now a hard-working and contributing member of society.

2. *McDonald's Service Previously of a Period of Incarceration.*

Before being released on bail, McDonald served a lengthy period of incarceration (from April, 2006, to October, 2007) when he was released on pretrial supervision.

From the utilitarian perspective, no one has opined that additional incarceration, as compared to supervised probation,

PDF created with pdfFactory Pro trial version www.pdffactory.com

would advance community safety, or the cause of McDonald's rehabilitation. The best rehabilitation for the defendant would lie in the opportunity to continue working and providing for his loved ones, with probation supervision. The incarceration he has already experienced may be seen as having been helpful to him. But now McDonald has attained positive momentum and direction in his life that should not be halted.

B. **The Guidelines Perspective**.

1. *McDonald's Minimal Role in the conspiracy.*

The Presentence Report and the United States agree that McDonald's role in the conspiracy was minor and that he is entitled to a two-level adjustment.

But Section 3B1.2 of the U.S.S.G. allows a four-level adjustment for *minimal* participants. In *United States v. Christman*, 894 F.2d 339 (9th Cir. 1990), the Court of Appeals found that the defendant in that drug conspiracy case was more than a minimal participant because the record showed that he had utilized the telephone to negotiate the price and quantity of drugs.

Here, McDonald played no such role. He was no leader, originator, negotiator, enforcer, planner, money launderer, recruiter, or contraband finder. He made one, aborted trip that did not accomplish its purpose. He was also in a warehouse near his residence when arrests were made there and marijuana was

PDF created with pdfFactory Pro trial version www.pdffactory.com

seized.

Attachment A to the Presentence Investigation Report refers to the history of the conspiracy and the case. Attachment A contains 78 pages and 408 numbered paragraphs.

Attachment A refers to McDonald only in paragraphs 2, 6, 7. 90, 92, 128, 133, 224, and 292 -- just nine paragraphs out of 408. And even these paragraphs are principally redundant references to a single act, his unsuccessful attempt to drive from Alaska to Whitehorse, Canada -- a journey which never took him farther than the Canadian border.

The Commentary to Section 3B1.3, while stating that "the downward adjustment for a minimal participant will be used infrequently", goes on to give examples where a finding of minimal participation would be appropriate:

> It would be appropriate for example for someone who played no other role in a very large drug smuggling operation than to offload part of a single marijuana shipment or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.

This language approximates McDonald's actual role, except that he never smuggled anything and, while present in a warehouse containing marijuana, there is no evidence that he did anything to "offload" any part of a shipment.[2]

---

[2] The government's memorandum at page 3 merely says that on April 22, 2008, "the defendant then had the misfortune of showing up to hand pick his 20 pounds of marijuana from the 307

PDF created with pdfFactory Pro trial version www.pdffactory.com

As the United States's sentencing brief states at page 4 McDonald "joined the conspiracy in its waning days".

2. *McDonald's "Criminal Convictions"*.

McDonald in the Presentence Report is assessed a point for a conviction relating to a property damage charge in Bethel, Alaska when he was 19 years old. The Report signifies, first, that he was given two years probation and, second, that the conviction was set aside. PSR at 5. The Report also goes on to say that police reports regarding this incident "are no longer available." *Id*. at 6. There was no "sentence of imprisonment" within the meaning of U.S.S.G. sec. 4A1.1(c). Considering McDonald's age at the time, and that the incident which gave rise to the property damage charge must have occurred on or before July 4, 1996, and that only probation was imposed, and that the conviction was set aside, no criminal history point for it should be assessed.

Consequently, the true criminal history for McDonald is a single point, placing him in the Criminal History I category. While the government states that the defendant "has had several brushes with the law", the guidelines do not impose points for "brushes with the law", but only for convictions which meet specific criteria.

---

pound load that had just arrived." It describes how, "(s)hortly after the defendant arrived and was putting his marijuana in boxes, scores of federal and state agents descended upon the

PDF created with pdfFactory Pro trial version www.pdffactory.com

With the reduction of the adjusted base offense level to 18, with the government's motion for downward departure in mind, as a Category I criminal history defendant, McDonald would have a guideline sentencing range of from 27 to 33 months.

With an adjusted base offense level of 16, as a minimal participant in the conspiracy, McDonald's guidelines sentence would be just 21 to 27 months. (These calculations, of course, are without regard to the government's motion for downward departure).

2. *Significant Assistance; Downward Departure.*

By motion, the government acknowledges that McDonald provided substantial assistance. Per its motion under 18 U.S.C. sec. 3553(e), the sentence here may be less than the mandatory minimum. The government also acknowledges that McDonald "provided surprisingly detailed information about his scheduled trip to Whitehorse, including notes containing the name of the Canadian source of supply he was scheduled to meet there." Motion for Downward Departure at 3. McDonald provided significant help to the government despite the fact that, as the government has conceded, he had only a limited participation in the conspiracy, in a brief window of time, in the conspiracy's waning days.

The government's motion calls for a 25% reduction on the

---

location to execute search warrants". *Id.* at 3-4 (Underlining added).                                    4

PDF created with pdfFactory Pro trial version www.pdffactory.com

theory that while McDonald provided "surprisingly detailed information", he was not the earliest defendant in the case to come forward.  But McDonald was timely, as the government acknowledges.  That someone else, who was a major participant, came forward quicker should not be a makeweight against a minor or minimal participant.

Moreover, when informed of the possibility that a conspiracy principal might be allowed to withdraw his plea and proceed to trial, McDonald authorized a motion to continue the date of sentencing in the expectation that he might be of further use by providing truthful testimony at a future trial.

*3. Guideline Purpose: Reduction of Unwarranted Disparity.*

One of the goals of the guidelines themselves is the reduction of unwarranted disparity.  Admittedly, the accomplishment of that task is challenging, especially in a conspiracy case with numerous co-defendants.  However, were McDonald required to do additional time, when another participant (who played a *longer* and *larger* part in the conspiracy) is not, the goal of avoiding unwarranted disparity would be disserved, not advanced, undermining an important guideline goal.

This is especially notable since a co-defendant who is receiving no additional time to serve is Kevin Browning,

PDF created with pdfFactory Pro trial version www.pdffactory.com

McDonald's brother-in-law, who was by all accounts a far more active participant in the conspiracy. Indeed, on information and belief, only McDonald has been recognized to date as playing a minor role in the conspiracy, and Browning was not so recognized. Browning's involvement in the conspiracy is understood to have existed over an eight-month period; McDonald's involvement was for just a few weeks. McDonald does not begrudge his brother-in-law's freedom, but for himself and family members, an outcome which would require him to return to custody while Browning remains at liberty would be an unwarranted disparity, at odds with a principal goal of the guidelines themselves.

DATED at Anchorage, Alaska, this 30th day of May, 2008.

Respectfully Submitted:

/s/ Joe P. Josephson
Attorney for Robert McDonald

Certificate of
Electronic and other
Service:
I certify that at
Approximately 8:00 a.m.,
Friday, May 30, 2008,
this document was
transmitted electronically
to the United States
Attorney for the District
of Alaska (attention Frank
Russo, Assistant U. S. Attorney),
and faxed to him at (907)
271-1500, and faxed to
Patricia Wong, Probation
Officer, U. S. Probation
Service at 271-3060.

/s/ Joe P.Josephson
Joe P. Josephson

PDF created with pdfFactory Pro trial version www.pdffactory.com

8

PDF created with pdfFactory Pro trial version www.pdffactory.com

8

PDF created with pdfFactory Pro trial version www.pdffactory.com